WILLIAM HENRY DU PONT, Petitioner, v. THE FAMILY COURT FOR NEW CASTLE COUNTY, DELAWARE, Consisting of Francis A. Reardon and Elwood F. Melson, Judges thereof, Respondents, DEBORAH ELDREDGE DU PONT, DEBORAH ELDREDGE DU PONT, next friend of Deborah Helen du Pont, a minor, Henry Laurence du Pont, a minor, Harriet Nicole du Pont, a minor, Intervening Respondents.

*(June 4, 1959.)*

SOUTHERLAND, C. J., WOLCOTT and BRAMHALL, J. J., sitting.

*William S. Potter, James L. Latchum* and *Hugh Corroon* for Petitioner.

*Daniel L. Herrmann* and *William Duffy, Jr.,* for Respondents and Intervening Respondents; *Laurence H. Eldredge* (of Philadelphia) of counsel.

Supreme Court of the State of Delaware, No. 9, 1959.

WOLCOTT, J.:

This is an original petition for a writ of prohibition seeking to prevent the Family Court of New Castle County from pro-

ceeding further with an action by which the petitioner's deserted wife seeks separate maintenance and support for herself and her minor children. This court, upon motion of the petitioner, ordered that further proceedings in the Family Court be temporarily stayed, and that the plaintiffs in the Family Court be permitted to intervene in this action as respondents. Thereupon, the Family Court plaintiffs intervened and moved to dismiss the petition.

The facts are not disputed. Petitioner and one of the intervening respondents are husband and wife, the parents of three minor children, the other intervening respondents. In February, 1959, the wife commenced suit against the petitioner in the Family Court of New Castle County under 10 *Del. C.* § 963 for support of the minor children and for separate maintenance. In that action an interim order for support, now modified by order of this court, was entered.

Prior to the entry of the order by the Family Court, the petitioner moved in that court to dismiss the action, or for a stay of further proceedings, upon the ground that the assumption of jurisdiction by the Family Court was void by reason of the unconstitutionality of 10 *Del. C.* § 963. The motion to dismiss, or for a stay, was denied. Petitioner now seeks in this court a writ of prohibition to prevent the assumption of jurisdiction by the Family Court asserting the same reason of alleged unconstitutionality.

The allegations of the petition are sufficient to invoke this court's jurisdiction, for they assert a determination by the Family Court to proceed further with a matter not legally within its cognizance. *Canaday v. Superior Court*, 10 *Terry* 332, 116 *A.* 2d 678.

The question of whether the petitioner has other adequate remedies to correct the asserted error of the Family Court, which, as we noted in the *Canaday* case, under some circum-

stances will move this court to deny a writ of prohibition, is not presently before us, since the basic contention of petitioner is that 10 *Del. C.* § 963 denies him any right whatsoever to an appellate review of the order.

Several auguments are advanced by petitioner in support of his contention that 10 *Del. C.* § 963 is unconstitutional and thus a nullity. We consider only two of them which may be stated to be that, first, the statute is defective in that it purports to confer upon the Family Court exclusive jurisdiction over separate maintenance actions by taking such jurisdiction from the Court of Chancery without, at the same time, providing in the Family Court remedies the equivalent of those afforded in the Court of Chancery; and, second, that the statute is defective in providing a right of appeal to the wife and minor children and failing to provide such right of appeal to the husband. We do not reach the other questions urged by the petitioner.

Initially, we consider the purpose with which the General Assembly enacted 10 *Del C.* § 963. In 1945, by 45 *Laws, Ch.* 241, the Family Court of New Castle County was established as a statutory court of exclusive limited jurisdiction over matters relating to the welfare of children and families. The exclusive jurisdiction thus conferred was criminal or quasi-criminal in nature. Proceedings were brought in the name of the State by information to which a plea of guilty or not guilty was taken. To this court was assigned exclusive jurisdiction in New Castle County over cases of the non-support of wives and minor children, which theretofore had been within the jurisdiction of the former Court of General Sessions and the Municipal Court of Wilmington. Such proceedings are quasi-criminal in nature and are commenced by the filing of an information. In re *Alexander,* 3 *Terry* 461, 36 *A.* 2d 361; *Harris v. State,* 7 *Terry* 111, 82 *A.* 2d 387. Appeals from the Family Court by 10 *Del. C.* § 988 are taken to the Superior Court and there are trials *de novo* before a jury upon an information presented by the Attorney General

for the same offense for which the appellant had been tried in the Family Court. *State v. Harris,* 6 *Terry* 377, 75 *A.* 2d 214.

The jurisdiction of the Family Court remained exclusively criminal or quasi-criminal until 1955 when 10 *Del. C.* § 963 was enacted, adding to the jurisdiction of the Family Court purportedly exclusive jurisdiction over civil causes for separate maintenance and support which theretofore had been exercised by the Court of Chancery. It is perfectly clear from the title of the Act (50 *Laws, Ch.* 264) that it was intended to confer exclusive jurisdiction over such civil actions upon the Family Court, and at the same time remove that jurisdiction from the Court of Chancery. In so providing, the General Assembly conferred upon the Judges of the Family Court all the jurisdiction and powers relating to separate maintenance actions theretofore exercised by the Chancellor. This jurisdiction and these powers were specifically declared to be in addition to the Family Court's criminal or quasi-criminal jurisdiction over non-support.

The enactment of 10 *Del. C.* § 963 followed the decision of this court in *du Pont v. du Pont,* 32 *Del. Ch.* 413, 85 *A.* 2d 724, 734, that the Court of Chancery had jurisdiction over actions for separate maintenance despite the provision of 45 *Laws, Ch.* 241 conferring upon the Family Court exclusive jurisdiction over the non-support of a deserted wife. We held in that case that Chancery jurisdiction can be curtailed by the General Assembly only by expressing an intention to do precisely that and, at the same time, creating in another tribunal "remedies which are the equivalent of the remedies that would have been available in the Court of Chancery."

We pointed out in the du Pont case that the then-existing remedy in the Family Court was not the equivalent of the remedy available to a deserted wife in Chancery, because in the Family Court the wife was not in control of her suit, could not select her own counsel, could not compel her husband to bear the expense of the litigation, could not petition for the citation of her

husband for contempt for refusal to abide by the court's order, could not sequester her husband's property to satisfy the court's award, and, finally, in the event of an adverse decision, could not appeal.

By the enactment of 10 *Del. C.* § 963, an attempt was made to supply the deficiencies in the remedies available in the Family Court and thus take from the Court of Chancery its jurisdiction to give relief in actions for separate maintenance. That this was the legislative intent is clear, not only from the title of the act, but also from the inclusion in the body of the act of provisions designed to meet specifically the deficiencies of the former remedy of non-support which we had enumerated in the du Pont case.

The intervening respondents argue that we are not concerned with the question of whether or not the General Assembly effectively divested the Court of Chancery of its jurisdiction over separate maintenance since the authority of the Family Court over this matter can be sustained in any event as the grant to it by the General Assembly of concurrent jurisdiction over separate maintenance. *Glanding v. Industrial Trust Co.*, 28 *Del. Ch.* 499, 45 *A.* 2d 553. Thus, it is argued that the creation of a concurrent partial jurisdiction over such matters in the Family Court does not require the establishment of the equivalent of the Chancery remedy.

We disagree, however, that we are not concerned in this case with the divestment of Chancery jurisdiction over this subject. The history of the statute, its title and the provisions of its body make it crystal clear that the intention of the General Assembly was to confer an exclusive jurisdiction upon the Family Court and take that jurisdiction from the Court of Chancery. We think the constitutionality of the statute must, accordingly, be judged in the light of the demonstrable legislative intent. When such is clear, we think, we are not at liberty to ignore it and, in effect, by judicial construction place upon

our statute books a law the General Assembly did not intend to enact, and, indeed, as far as we know might well have refused to enact in the suggested construed form. In this light, we approach the decision of the question of constitutionality.

10 *Del. C.* § 963(3) (D) confers on the wife, or the next friend of a minor child, the right of appeal to the Superior Court from an adverse order or decree of the Family Court "in form and in manner as provided by law". § 963, however, confers no right of appeal upon the husband. The failure to so provide is the basis for petitioner's attack on the statute. The argument is that the giving of a right of review to the wife and children, while denying it to the husband, violates the 14th Amendment of the Federal Constitution, and Art. 1, §§ 7 and 9 of the Delaware Constitution, *Del. C. Ann.*

The right to review by appeal the proceedings of an inferior statutory tribunal in this state exists only to the extent to which it is granted by the Constitution and Laws of the state. *Casey v. Southern Corporation,* 26 *Del. Ch.* 447, 29 *A.* 2d 174; *Elbert v. Scott,* 5 *Boyce* 1, 90 *A.* 587. There is no right of appeal in civil cases from the Family Court or, for that matter, from any Delaware statutory court, provided for by the Delaware Constitution. It follows, therefore, that if such right exists it must be created by statute.

We do not consider it necessary to labor the point that the grant of a right of appeal to one litigant with an accompanying failure to make the same grant to the other is in law discrimination and, as such, a violation of both the Federal and State Constitutions. *Cf. Hecker v. Illinois Central Ry. Co.,* 231 *Ill.* 574, 83 *N. E.* 456; *State ex rel. Owen v. Wisconsin-Minnesota Light & Power Co.,* 165 *Wis.* 430, 162 *N. W.* 433. Indeed, the intervening respondents do not take issue with this fundamental proposition, but argue that the husband has a statutory right of appeal.

It is argued that 10 *Del. C.* § 988, the section of the original Family Court Act allowing appeal to the Superior Court, covers this case and would permit review at the suit of the husband of an order for separate maintenance. This being so, it is argued, there has been no deprivation of due process or denial of equal protection of the law.

The argument runs to the effect that it was necessary to grant specifically a right of review to a wife, in order to meet the objections set forth in *du Pont v. du Pont, supra,* but that it was unnecessary to do so for the husband since he already had a right of appeal by § 988. It is urged that § 963(3) (D) giving an appeal "in form and in manner as provided by law" is the equivalent of the husband's right of appeal under § 988 "in form and in manner provided in this section or by law". We do not agree.

The appeal conferred by § 988 is an appeal from the criminal or quasi-criminal side of the Family Court and in manner and form consists of a criminal trial *de novo* in the Superior Court, upon an information filed by the Attorney General for the same charge upon which the appellant was tried in the Family Court. *Monastakes v. State,* 2 *W. W. Harr.* 549, 127 *A.* 153; *State v. Harris,* 6 *Terry* 377, 75 *A.* 2d 214. On the other hand, the appeal conferred upon the wife and minor children by § 963 is an appeal from the newly-created civil side of the Family Court.

The intervening respondents argue that the phrases appearing in § 963 and § 988 are equivalent, but we cannot see how they could be. § 988 as first enacted by 45 *Laws, Ch.* 241, § 22 was not separated into the sub-paragraphs now appearing as the work of the 1953 Codifiers, but was enacted as one paragraph providing for an appeal to the Court of General Sessions, the then criminal court, which by the Constitutional Amendment of 1951 was absorbed into the Superior Court now exercising general criminal, as well as civil, jurisdiction. It is thus apparent

that § 988, both as originally enacted and as embodied in the 1953 Code, provides for an appeal from the finding of guilty in a criminal case to a criminal court of general jurisdiction. As such, it fulfills the requirement of Art. 4, § 28 of the Constitution that there shall be an appeal to the Superior Court from all inferior courts in all criminal cases in which the sentence shall be imprisonment exceeding one month, or a fine in excess of $100. As we have pointed out, such appeals consist of new trials in the Superior Court and must be carried forward in that court by the filing of an information by the Attorney General.

With respect to § 963, it is provided that the appeal shall be in the manner provided by law, but precisely what that means is difficult to say. Intervening respondents suggest that such appeals are governed by Rule 72(g) of the Superior Court *Del. C. Ann.*, and are to be heard on the record below. Rule 72(g), however, was promulgated in 1950 to govern appeals which, by statute, were to be decided upon the record made before the inferior statutory tribunal. *Lockwood v. Unemployment Compensation Commission*, 6 *Terry* 536, 76 *A.* 2d 311. Furthermore, it is apparent that an appeal under § 963 could not be decided upon a record made before the Family Court for the obvious reason that no record of the testimony before that court is made.

By analogy, an appeal under § 963 must be similar to appeals to the Superior Court in civil cases from the Courts of Common Pleas and Justices of the Peace, which take the form of a new trial with the right to have such trial before a jury if one party so elects. Whatever the method of appeal, however, it is certainly different from appeals taken under § 988, for they can be heard and decided only after the Attorney General has filed an information in the Superior Court. That section is obviously not applicable to cases arising under § 963 because the State is not a party to such causes and, indeed, has no interest in such purely civil actions. That such actions are purely civil in nature becomes apparent when it is realized that the

award of separate maintenance to a deserted wife is the enforcement of the wife's common law right to be maintained by her husband, for which legal right the common law remedy of purchasing upon the husband's credit was inadequate. *du Pont v. du Pont, supra.* Such a right belonging to the wife is entirely distinct from the State's interest as *parens patriae* in preventing the wife from becoming a public charge. To prevent this from happening, the State proceeds criminally against the husband for non-support.

It follows, therefore, that since § 963 provides solely for the right of appeal at the suit of the wife and minor children, it runs afoul of the due process and equal protection provisions of the Federal and State Constitutions.

The intervening respondents argue, in the alternative, however, that the husband has equal right of review by writ of *certiorari*. The argument is based upon the assumption that the appeal granted the wife by § 963 is to be heard and decided upon the record made in the Family Court. As we have pointed out, however, it is doubtful that § 963 provides for such an appeal, but, assuming such to be the fact, it is apparent that review by writ of *certiorari* is not the equivalent, for in such proceedings the evidence received in the inferior court is not part of the record to be reviewed in a *certiorari* proceeding. *Thompson v. Thompson,* 3 *W. W. Harr.* 593, 140 *A.* 697; *Kowal v. State,* 10 *Terry* 549, 121 *A.* 2d 675; *Rodenhiser v. Department of Public Safety,* 11 *Terry* 585, 137 *A.* 2d 392. Therefore, it does not matter whether § 963 gives the wife an appeal by way of trial *de novo* or upon the record made below, for in either event review by writ of *certiorari* is not the equivalent.

We conclude, therefore, that in failing to give the husband the same right of appeal as § 963 confers upon the wife and minor children, the statute is constitutionally defective.

This conclusion, in our opinion, voids § 963 in its entirety for we think it obvious that the General Assembly under no cir-

cumstances would have intended the statute to be operative with no right of appeal from the orders of the Family Court in such cases. Yet, that would be the result if we held that the appeal provisions of the act were severable from the rest, as would have to be done if equal protection of the laws is to be maintained. The General Assembly intended no such result.

Nor, can we sustain the statute by construction upon the theory that in so doing we were carrying out the general policy of the law in providing for appellate review. In the first place, the appeal provision is not susceptible to judicial construction. It is clear on its face, and is limited to a grant to a wife and children of the right of appeal. The husband is excluded by not having been included. It may well be that this resulted from the belief of the draftsman that § 988 preserved the husband's right. If that be the fact, it was a mistaken belief. There has resulted, therefore, a *casus omissus* which the courts are powerless to supply. *Fouracre v. White*, 7 *Boyce* 25, 102 *A.* 186.

For the foregoing reasons, therefore, we are of the opinion that 10 *Del. C.* § 963 is unconstitutional for its failure to provide for an equal right of appeal to all parties. We express no opinion upon the related question of whether or not, had appellate rights been adequately provided, the statute would have accomplished the legislative purpose of conferring exclusive jurisdiction upon the Family Court over actions for separate maintenance. The point is not directly before us. We feel free to point out, however, the inherent difficulty, if not impossibility, of seeking to confer upon a tribunal of limited criminal jurisdiction, conducting its business by criminal procedures, the broad civil remedies of equity in the field of separate maintenance. The problem of harmonizing two such unrelated fields of the law would, of itself, seem to raise grave doubts of the wisdom of trying.

A writ of prohibition will be issued ordering the Family Court to cease from proceeding any further in the action brought by the intervening respondents against the petitioner.

An order may be presented on notice.