Michael P. MASON, Plaintiff,

v.

BOARD OF PENSION TRUSTEES,
Defendant.

John QUIGLEY, Plaintiff,

v.

BOARD OF PENSION TRUSTEES,
Defendant.

Superior Court of Delaware,
New Castle County.

Submitted: Feb. 17, 1983.

Decided: April 11, 1983.

Jerome O. Herlihy, of Herlihy, Herlihy & Harker, Wilmington, for plaintiffs.

Roger A. Brown, of Dept. of Justice, Wilmington, for defendant.

WALSH, Judge.

These two actions, consolidated for briefing and disposition, involve efforts by two members of the Delaware State Police to seek review of separate rulings by the Board of Pension Trustees of the State of Delaware (the Board) denying them disability pensions. The Board has moved to dismiss both proceedings on the ground that plaintiffs' claims are not reviewable in the Superior Court.

Plaintiff, Michael P. Mason, has been a member of State Police since 1972. On May 22, 1981, he filed a petition with the Board alleging that, as the result of a work-connected injury which occurred on July 25, 1978, he was no longer physically capable of performing normal police duties. After a review of the medical evidence and a hearing concerning his physical condition the Board denied Mason's claim on April 27, 1982. Mason filed this action on October 13, 1982, alleging, *inter alia,* that the Board's decision was arbitrary and capricious and in clear disregard of the evidence.

Plaintiff, John Quigley, has been a member of the State Police since 1970. He applied for a disability pension on December 4, 1980, alleging that he was suffering from diabetes and emotional difficulties resulting from a work-related injury sustained in 1979. After evaluating Quigley's medical condition and conducting a hearing on the matter, the Board denied the disability application on September 29, 1981. Plaintiff thereafter sought a reconsideration of that decision but the Board again denied the pension application on February 12, 1982. This action was commenced on October 19, 1982.

While there are factual differences in the merits of the underlying pension claims, the Board's motion to dismiss presents a common threshold question: In the absence of a statutorily defined right of appeal, is there an effective appellate remedy in the Superior Court for review of rulings of the State Board of Pension Trustees? Plaintiffs argue that appellate relief may be secured through one, or more, of the three legal remedies they invoke: a Writ of Certiorari, a Writ of Mandamus and Declaratory Judgment. The Board contends that none of these devices is available and, as a result, plaintiffs' sole recourse is through an action in the Court of Chancery.

The availability of certiorari as a method of review is quickly addressed. Historically, a writ of certiorari issued to test the authority of a lower tribunal, judicial or administrative, to adjudicate the matter sought to be reviewed. *Schwander v. Feeney's,* Del.Super., 29 A.2d 369 (1942); Woolley, *Delaware Practice,* § 897. But such review is limited to errors which appear on the face of the record and does not embrace an evaluation of the evidence considered by the inferior tribunal. *Castner v. State,* Del.Supr., 311 A.2d 858 (1973); *Rodenhiser v. Department of Public Safety,* Del.Super., 137 A.2d 392 (1957). Although plaintiffs allege that the Board's denial of their petition was arbitrary, their grievance is directed to the Board's evaluation of the evidence before it. A review of that evaluation, by whatever appellate standard is applied, necessarily implies an analysis of matters outside what is traditionally viewed as the record for common law certiorari purposes. *Rodenhiser, supra.* Clearly, certiorari is not a remedy available in these cases.

Equally unavailing is plaintiffs' attempt to use a declaratory judgment action as a vehicle for relief. Plaintiffs contend that their dispute with the Pension Board is a continuing one involving a difference over fundamental policy and touching contractually secured obligations. While this assertion may be correct it overlooks what has

already occurred between the parties in the airing of their fundamental differences. The Delaware Declaratory Judgment Act (10 *Del.C.* Ch. 65) has as its stated purpose "to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations." (10 *Del.C.* § 6512). It exists to provide a method for resolving a controversy where no other remedy exists. *Hampson v. State,* Del. Supr., 233 A.2d 155 (1967). Here the Pension Board has acted in a definitive manner and while the plaintiffs are unhappy with the result, the controversy has been heard in the manner authorized by statute.[1]

A declaratory judgment action involves a fresh airing of the controversy with the option of jury participation to resolve issues of fact. 10 *Del.C.* § 6509; *Clemente v. Greyhound Corporation,* Del.Super., 155 A.2d 316 (1959). To permit plaintiffs to avail themselves of such a remedy would afford them a *de novo* determination of their disability claims—a result which would negate completely the Board's statutory duty. Such a result would be clearly contrary to the legislative scheme that the Board exercise initial and primary authority to adjudicate disability claims.

 The availability of mandamus as a method of review presents a troublesome question. As traditionally applied in the Superior Court a writ of mandamus issues to require of an inferior court or administrative body the performance of a clear legal duty. *State v. McDowell,* Del.Super., 57 A.2d 94 (1947); Woolley, *Delaware Practice,* § 1655. The writ is appropriate, however, only if the duty sought to be compelled is ministerial. *Darby v. New Castle Gunning Bedford Ed. Ass'n.,* Del.Supr., 336 A.2d 209 (1975); *Remedio v. City of Newark,* Del.Supr., 337 A.2d 317 (1975). A ministerial duty is one prescribed with "such precision and certainty that nothing is left to discretion or judgment. . . ." *Darby, supra,* at 211.

The Board's duty to "determine eligibility" based on evidence presented to it necessarily implies the application of judgment. This is particularly true in cases, such as those of petitioners, which involve the evaluation of claimed physical disabilities and the effect of those disabilities on the performance of the duty of law enforcement. Were I writing on a clean slate, I would have no hesitation in ruling that a writ of mandamus does not provide a method for review of the grievances here presented. But a decision of the Court of Chancery appears to indicate that mandamus provides an adequate remedy to secure such relief.

In *Bramble v. Dannemann, et al.,* Del.Ch., C.A. No. 5769 (Unreported Opinion, January 10, 1980), Chancellor Brown ruled that the Court of Chancery lacked jurisdiction to entertain a claim by a former member of the State Police that the Board of Pension trustees had arbitrarily denied him a service-connected disability pension. While recognizing the traditional limitations attendant upon a mandamus action, the Chancellor was persuaded that precedent dictated that mandamus provided an adequate legal remedy which precluded equity jurisdiction. The *Bramble* matter was thereupon transferred to this Court under the provisions of 10 *Del.C.* § 1902. After the *Bramble* claim had been transferred to this Court in the form of a mandamus action, the Board of Pension Trustees adopted a position contrary to its stance in the Court of Chancery and moved to dismiss the mandamus action on the ground that the relief sought was beyond the scope of the writ. Judge Taylor ruled that Chancellor Brown's determination that mandamus was a proper remedy was binding on the parties and denied the Board's motion to dismiss. *Bramble v. Dannemann, et al.,* Del.Supr., 80C–FE–84 (Order, April 30, 1982).

 The posture of mandamus as a proper remedy in the cases now under considera-

---

1. 29 *Del.C.* § 8308(b)(2) confers upon the Board the "power and duty to determine eligi-

bility for disability pension benefits."

tion is muddled, to say the least. Factually, *Bramble* and the present actions are not distinguishable. All three individuals seek relief from decisions of the Board of Pension Trustees which denied them work-connected disability pensions after evaluation of evidence in hearings required by statute. In *Bramble* the Board took the position before the Chancellor that mandamus offered a viable remedy although it apparently asserted a contrary position after the matter was transferred to the Superior Court. Judge Taylor's ruling, although dictated by the earlier Chancery determination, represents a decision by a Judge of this Court which is entitled to deference. Nonetheless, and with reluctance, I conclude that the decision in *Bramble* is not supported by the authorities therein cited and should not control the result in these cases.

In *Bramble* the Chancellor felt constrained by the effect of two decisions which implicitly recognized the availability of mandamus as a method to test administrative rulings denying police pensions. Both decisions involved attempts by members of the Bureau of Police of the City of Wilmington to secure longevity pensions, not disability pensions. *Sabo v. Williams,* Del.Ch., 303 A.2d 696 (1973) involved the effort of a Wilmington policeman to secure retirement credit for a four year period when he worked as a radio clerk. Although the credit was initially allowed by the trustees of the pension fund, it was later repudiated. In ruling that the plaintiffs' entitlement to a pension "raises a purely legal question" devoid of fiduciary implications, the Court determined that an adequate remedy existed at law in the form of a mandamus action (303 A.2d at 697). The Court cited as authority for its holding, the second decision relied upon by Chancellor Brown in *Bramble: Dorsey v. State Ex Rel. Mulrine,* Del.Supr., 283 A.2d 834 (1971).

The *Mulrine* decision was commenced as a mandamus action and throughout its somewhat tortured history was viewed as an action to require the Trustees of the Police Pension Fund of the City of Wilmington to award a pension based on 20 years of continuous service. Although the matter was twice appealed to the Delaware Supreme Court, ultimate relief afforded the plaintiff was a determination that the Pension Trustees had improperly interpreted the applicable pension statute in failing to recognize his service as continuous.

■ It is true, as Chancellor Brown noted in *Bramble,* that mandamus has been recognized as an appropriate remedy to seek review of a denial of a pension claim based on the alleged fulfillment of the statutory conditions. Where the claim is based on application of the statute to undisputed facts involving the calculation of service the functioning of the pension board is purely ministerial. In both *Mulrine* and *Sabo,* the pension board was not required to weigh evidence or conduct a hearing. Both matters were decided on the face of the pension applications without the exercise of discretion or judgment.

In the cases now under consideration, the petitioners not only attack the Board's decision as contrary to the evidence but claim that the Board's action in denying their claim is inconsistent with its award of pensions to other applicants. This allegation necessarily seeks review of the Board's action on a comparative basis as well as within the merits of the individual claims. Clearly such a review is far more extensive than the mere application of fixed standards to undisputed events.

I recognize that a decision dismissing these actions on the ground that none of the remedies claimed, including mandamus, is properly invoked creates the anomaly that plaintiffs will be required to seek relief in the Court of Chancery where the bar of the *Bramble* decision awaits them. It is also clear that this result is dictated, in part, by the failure of the General Assembly to provide a statutory mode of appeal. But a court of law cannot bend well-established standards to suit the occasion. In the absence of the availability of a legal remedy a court of equity should respond.

The motion to dismiss will be granted subject to the plaintiffs' right to transfer these actions to the Court of Chancery under 10 *Del.C.* § 1902.

IT IS SO ORDERED.